# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

| | |
|---|---|
| WIRELESSWERX IP LLC, | Case No.: 7:25-cv-00198-ADA |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| VERIZON COMMUNICATIONS INC., | |
| Defendant. | |

## VERIZON'S MOTION TO STRIKE AND DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     FACTS ............................................................................................................... 2

        A.      Procedural History ............................................................................... 2

        B.      The '982 Patent .................................................................................... 4

        C.      Plaintiff's Infringement Theories......................................................... 6

III.    ARGUMENT ..................................................................................................... 8

        A.      Legal Standard ..................................................................................... 8

        B.      The SAC Violates Rule 15(a) ............................................................. 9

        C.      The SAC Fails To State A Plausible Claim For Direct
                Infringement...................................................................................... 10

        D.      The SAC Fails To State A Plausible Claim For Indirect
                Infringement...................................................................................... 13

        E.      The SAC Should Be Dismissed With Prejudice ............................... 17

IV.     CONCLUSION................................................................................................ 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adnexus Inc. v. Meta Platforms, Inc.*,
  6:23-CV-152-JKP, 2024 WL 409738 (W.D. Tex. Feb. 2, 2024) ...............................11, 14, 18

*Affinity Labs of Texas, LLC v. Blackberry Ltd.*,
  6:13-cv-362, 2014 WL 12551207 (W.D. Tex. Apr. 30, 2014) .............................................15

*Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*,
  6:13-CV-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) .............................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................................................9

*Auth Wallet, LLC v. Amarillo Nat'l Bank*,
  7:24-cv-00064-DC-DTG, Dkt. 27 at 3 (W.D. Tex. Feb. 28, 2025) ...................................9, 10

*Avocent Huntsville, LLC v. ZPE Sys.*,
  3:17-cv-04319-WHO, 2018 WL 1411100 (N.D. Cal. Mar. 21, 2018) ...................................17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................................9

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012)........................................................................................15, 16

*Billjco, LLC v. Apple Inc.*,
  583 F. Supp. 3d 769 (W.D. Tex. 2022)..................................................................................16

*Bot M8 LLC v. Sony Corp. of Am.*,
  4 F.4th 1342 (Fed. Cir. 2021) ..............................................................................................13

*Collins v. Morgan Stanley Dean Witter*,
  224 F.3d 496 (5th Cir. 2000) ...............................................................................................12

*Contiguity, LLC v. Conduent Bus. Servs., LLC*,
  W-23-CV-00038-XR, 2024 WL 252068 (W.D. Tex. Jan. 22, 2024) .....................................18

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
  6:14-CV-752-JRG-JDL, 2015 WL 5000397 (E.D. Tex. June 3, 2015)...................................15

*Decapolis Sys., LLC v. Epic Sys. Corp.*,
  W-21-CV-00434-ADA, 2021 WL 5908403 (W.D. Tex. Dec. 14, 2021) ................................8

*Educ. Mgmt. Servs., LLC v. Slaikeu*,
    SA-14-CA-135-OLG, 2014 WL 12586408 (W.D. Tex. May 23, 2014), *R&R adopted*, 2014 WL 12586779 (W.D. Tex. June 12, 2014)........................................9

*Escapex IP, LLC v. Google LLC*,
    23-CV-10839, 2025 WL 893739 (S.D.N.Y. Mar. 24, 2025)...............................................18

*Heinze v. Tesco Corp.*,
    971 F.3d 475 (5th Cir. 2020) ...................................................................................9

*Hypermedia Navigation LLC v. Google LLC*,
    18-cv-01637-HSG, 2019 WL 1455336 (N.D. Cal. Apr. 2, 2019) ...........................................15

*Iron Oak Techs., LLC v. Acer Am. Corp.*,
    6:17-cv-00143-RP-JCM, 2017 WL 9477677 (W.D. Tex. Nov. 28, 2017)............................15

*Iron Oak Techs., LLC v. Dell, Inc.*,
    1:17-cv-999-RP, 2018 WL 1631396 (W.D. Tex. Apr. 4, 2018).........................................9, 16

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
    572 U.S. 915 (2014)...................................................................................................11, 14

*Lone Star Fund V (U.S.), LP v. Barclays Bank PLC*,
    594 F.3d 383 (5th Cir. 2010) .....................................................................................11

*LS Cloud Storage Techs., LLC v. Google, LLC*,
    1:22-cv-00853-RP, 2023 WL 11999195 (W.D. Tex. Jul. 25, 2023) ......................................10

*U.S. ex rel. Mathews v. HealthSouth Corp.*,
    332 F.3d 293 (5th Cir. 2003) ....................................................................................8

*Mesa Digital, LLC v. Cellco Partnership*,
    6:21-cv-1020-ADA, Dkt. 33 (W.D. Tex. Jul. 26, 2022)..................................................10

*NobelBiz, Inc. v. InsideSales.com, Inc.*,
    6:13-cv-360-MHS, Dkt. 32 (E.D. Tex. Oct. 12, 2014).........................................................17

*Textile Comput. Sys. v. Broadway Nat'l Bank*,
    620 F. Supp. 3d 557 (W.D. Tex. 2022).......................................................................16

*Vita-Mix Corp. v. Basic Holding, Inc.*,
    581 F.3d 1317 (Fed. Cir. 2009).................................................................................16

*White v. U.S. Corr., LLC*,
    996 F.3d 302 (5th Cir. 2021) ...................................................................................8

*WirelessWerx IP LLC v. Audi of America, Inc.*,
    4:25-cv-11147-FKB-CI, Dkt. 15 (E.D. Mich. Aug. 15, 2025) ..................................11, 12, 13

*WirelessWerx IP, LLC v. OnStar, LLC,*
    2:23-cv-11501 (E.D. Mich.)...............................................................................................17

*WirelessWerx IP, LLC v. Tesla, Inc.,*
    7:25-cv-00093-DC-DTG, Dkt. 16 (W.D. Tex. May 27, 2025)...................................11

**Statutes**

35 U.S.C. § 271(b) .............................................................................................................13

35 U.S.C. § 271(c) .......................................................................................................13, 15

**Other Authorities**

Fed. R. Civ. P. 12(b)(6).....................................................................................................3, 8

Fed. R. Civ. P. 15(a) ................................................................................................. *passim*

## I.     INTRODUCTION

The Court should strike and/or dismiss Plaintiff WirelessWerx IP LLC's Corrected Second Amended Complaint (Dkt. 23) ("SAC") because it was filed in violation of Rule 15(a) and fails to state a plausible claim for direct infringement or indirect infringement of the asserted patent.

The SAC violates Rule 15(a) because it was filed without Defendant Verizon Communications Inc.'s consent or the Court's leave, and Plaintiff already amended its complaint once as a matter of course. This is not the first time Plaintiff's counsel has ignored the relevant rules in filing an amended complaint in this District. The Court should strike the SAC, consistent with the cases discussed in § III.B.

The SAC fails to state a plausible claim for direct infringement because the alleged transponder (*smartphone*) and the alleged entity (*smartwatch*) are not "attached" as required by the claim limitation "an entity having an attached transponder." Plaintiff has pleaded itself out of court because documents cited in the SAC confirm the opposite of what the claims require. Thus, Plaintiff's direct infringement claim should be dismissed.

Plaintiff's indirect infringement claims fail for the same reason. Additionally, the induced infringement claim fails because there are no alleged facts showing Verizon acted with a specific intent to encourage another's infringement. And the contributory infringement claim fails because documents cited in the SAC confirm there are substantial non-infringing uses. Thus, the SAC should be dismissed in its entirety.

The Court should dismiss the SAC with prejudice because Plaintiff has had three opportunities to state a plausible infringement claim and has come nowhere close to doing so. Plaintiff's repeated failures to properly plead infringement show an inadequate prefiling investigation and confirm that further amendment would be futile. Additionally, Plaintiff has litigated in an unreasonable manner that weighs against allowing another opportunity to amend.

## II.    FACTS

### A.    Procedural History

Plaintiff has asserted U.S. Patent No. 7,323,982 ("'982 patent") and related patents in more than 50 cases, none of which reached claim construction. Ex. A.[1]

Plaintiff filed its original complaint against Verizon on April 25, 2025, alleging infringement based on Verizon's "Care Smart" products and services. Dkt. 1.

On June 27, 2025, Verizon sent Plaintiff's counsel, Mr. Ramey, a letter identifying fatal flaws in Plaintiff's infringement claim. Ex. B. Verizon asked Plaintiff to voluntarily dismiss its case. *Id.*

On July 3, 2025, Verizon asked Mr. Ramey if Plaintiff was going to file an amended complaint before July 14, 2025, which was Verizon's deadline to respond to the original complaint. Ex. C. Verizon requested this information so it could determine whether to incur additional expenses preparing a response to the original complaint. *Id.* Mr. Ramey responded that Plaintiff would file an amended complaint. *Id.* Mr. Ramey did not ask for Verizon's consent to file an amended complaint, nor did he provide a draft or otherwise disclose the contents of the amended complaint before filing it. Godfrey Decl., ¶ 6. Verizon never agreed that an amended complaint was appropriate, or to waive any grounds for challenging an amended complaint. *Id.*

On July 14, 2025, Plaintiff filed its First Amended Complaint ("FAC"), which presented a new infringement theory for the '982 patent. Dkt. 11.

On July 22, 2025, Verizon emailed Mr. Ramey and identified several allegations in the FAC that were factually incorrect and not supported by the documents cited therein. Ex. D. Verizon requested that Plaintiff dismiss the FAC so that Verizon could avoid the expense of a motion to

---

[1] Exhibits A through O are attached to the September 2, 2025, Declaration of Geoffrey M. Godfrey in support of Verizon's Motion to Strike and Dismiss Plaintiff's Second Amended Complaint ("Godfrey Decl.").

dismiss. *Id.* Mr. Ramey did not respond to Verizon's email and did not agree to dismiss the FAC. Godfrey Decl., ¶ 7.

On July 28, 2025, Verizon filed a Motion to Dismiss the FAC under Rule 12(b)(6) for failure to state a plausible infringement claim. Dkt. 15. Verizon's Motion identified the same pleading deficiencies that Verizon had identified in its earlier email to Mr. Ramey. *Id.* at 7-12.

Plaintiff's deadline to file a response to Verizon's Motion to Dismiss was August 11, 2025, pursuant to Local Rule CV-7(D)(2). That evening, Mr. Ramey emailed Verizon's counsel requesting a one-week extension. Ex. E. Less than 20 minutes later, without waiting for Verizon's response, Mr. Ramey filed an "unopposed" motion for extension in which he falsely represented that he had "conferred with Defendant's counsel . . . and they have no opposition to this extension." Dkt. 19 at 2. After reviewing Plaintiff's unilateral motion for extension, Verizon's counsel emailed Mr. Ramey and proposed "reciprocal 1-week extensions for the remaining briefing. Opposition due August 18, reply due September 1." Ex. E. Mr. Ramey agreed, *id.*, and filed an "amended unopposed" motion for extension of time consistent with those terms. Dkt. 20. The Court granted Plaintiff's requested extension in a Text Order dated August 14, 2025.

Notwithstanding the extension, Plaintiff failed to file any brief opposing Verizon's Motion to Dismiss the FAC.[2] Instead, Plaintiff filed a Second Amended Complaint, which presented yet another new infringement theory for the '982 patent. Dkt. 22. The SAC stated: "This amended complaint is filed by agreement of the parties." *Id.* at 1, n.1. But that statement was false. Plaintiff filed the SAC without Verizon's consent. After Verizon objected, *see* Ex. F at 2-4, Plaintiff filed a Corrected Second Amended Complaint that removed the false statement. Dkt. 23.

On August 19, 2025, Verizon filed a Notice of Non-Opposition to its Motion to Dismiss the

---

[2] Plaintiff also failed to serve its infringement contentions, which were due on August 28 pursuant to the Court's Text Order. Plaintiff still has not served its infringement contentions as of today.

FAC, and asked the Court to grant the Motion as unopposed. Dkt. 24. Plaintiff responded on August 20, 2025, "request[ing] the Court accept [its] Corrected Second Amended Complaint as its response to Defendant's Motion to Dismiss pursuant to Rule 15(a)(1)(B)." Dkt. 25 at 2. On August 22, 2025, Verizon filed a Reply explaining why the Court should deny Plaintiff's request and grant Verizon's Motion to Dismiss the FAC as unopposed. Dkt. 26.

### B. The '982 Patent

The '982 patent is titled "Method and System to Control Movable Entities," and the patent claims a method and system wherein a *transponder* attached to a moveable *entity* is programmed to define a *geographical zone* on a *pixilated image* and to perform a *configurable operation* when an *event* associated with the entity occurs in relation to the geographical zone. *See* '982 patent (Dkt. 23-1) at 1:57-2:48 & claim 1.

The *entity* having the attached transponder can be "a vehicle, a vessel, a craft, a boat, a helicopter, or a plane." *Id.* at 2:4-5 & claim 7. The *entity* can also be "cargo, persons, animals, or any other item where tracking its movement and/or location is beneficial." *Id.* at 6:36-38. Figure 1B of the '982 patent depicts an example of a car with an attached transponder (element 105):



The *transponder* is attached to the entity being tracked: "A transponder can be mounted, attached, manufactured, or otherwise included upon/in various articles or entities." *Id.* at 6:34-35;

*see also id.* at 26:50-52 (same), Figs. 1A & 1B (depicting transponder 105 attached to a car). "Within the context of the tracking system, the transponder works to collect, process, and communicate information about the article or entity to which the transponder is attached." *Id.* at 6:38-41; *see also id.* at 26:54-57 (same).

A microprocessor of the transponder is programmed to define a *geographical zone* by creating an enclosed area on a *pixilated image* using a plurality of coordinates. *Id.* at 2:63-67 & claim 1. This can be done by "assigning each coordinate to a pixel" and "connecting a plurality of assigned pixels by lines, wherein a series of contiguous and connected lines enclose an area in the pixilated image." *Id.* at 2:9-17 & claims 5-6. Figure 5B of the '982 patent illustrates a pixel map of a geographical zone (560):



The transponder's microprocessor is programmed to determine the occurrence of an *event* associated with the entity in relation to the geographical zone. In one example, "[w]hen the transponder 105 enters or exits waypoints and zones, an event message is transmitted indicating what reference point or zone has been entered or exited." *Id.* at 17:14-16. The '982 patent discloses a variety of events that can be monitored by the transponder attached to the entity. *Id.* at 2:18-39 & claim 8.

The transponder's microprocessor is further programmed to execute a *configurable operation*

when the event occurs. In the example above, the *configurable operation* is transmitting an event message when the transponder 105 enters or exists the geographical zone. *Id.* at 17:14-16. "The event message can include latitude, longitude, speed, direction, time, state of the inputs, odometer, event reason or source, and any other relevant information." *Id.* at 17:16-19. The '982 patent also discloses examples of a *configurable operation* that controls the entity to which the transponder is attached: "turning on an ignition to the entity, turning off the ignition to the entity, increasing speed of the entity, decreasing speed of the entity, regulating the engine temperature level, regulating the internal temperature level, locking a door or latch of the entity, unlocking of a door or latch of the entity, opening a window of the entity, closing a window of the entity, turning on a light indicator, change tire air pressure, turning on an alarm, or turning off an alarm." *Id.* at 2:40-48 & claim 9.

These key aspects of the patented invention are recited in representative claim 1 of the '982 patent, which is asserted in this case:

> 1. A method to wirelessly control an *entity having an attached transponder*, comprising:
>
> loading from a computing device to a transponder's memory a plurality of coordinates;
>
> programming a microprocessor of the transponder to define a *geographical zone* by creating an enclosed area on a *pixilated image* using said plurality of coordinates, wherein said enclosed area is representative of a geographical zone;
>
> programming the microprocessor in the transponder to determine the occurrence of an *event* associated with a status of the entity in relation to the geographical zone; and
>
> configuring the microprocessor to execute a *configurable operation* if the event occurs.

*Id.* at claim 1 (emphasis added).

### C. Plaintiff's Infringement Theories

Plaintiff alleges that "Verizon's Care Smart products" infringe the '982 patent. Dkt. 23, ¶ 15. Care Smart is a service that helps caregivers monitor the location of family members. Exs. G & H. A caregiver installs the Care Smart app on their smartphone and uses the app to monitor the location of a smartwatch worn by their family member. *Id.* The Care Smart app is compatible with the Verizon

Care Smart Watch and certain Apple Watch, Samsung Galaxy Watch, and Google Pixel Watch models. *Id.*

In its three complaints, Plaintiff has pleaded three different theories for how Verizon's Care Smart products allegedly infringe the '982 patent. None of these infringement theories is plausible.

In its original Complaint, Plaintiff alleged that a person wearing the Verizon Care Smart Watch is "an entity having an attached transponder," and the Care Smart Watch is the "transponder" that performs the functions recited in claim 1 of the '982 patent ("[load] a plurality of coordinates," "define a geographical zone," "determine the occurrence of an event," "execute a configurable operation," etc.). *See* Dkt. 1, ¶ 19; Dkt. 1-2 at 3-10 & 14. That infringement claim was frivolous because any adequate pre-filing investigation would confirm the Care Smart Watch does not satisfy the claim limitation requiring "*the transponder to define a geographical zone by creating an enclosed area on a pixilated image.*" Verizon addressed this pleading deficiency in a letter to Plaintiff's counsel. Ex. B.

In its FAC, Plaintiff abandoned its infringement theory based on the Care Smart Watch and alleged a new infringement theory based on the Apple Watch as the alleged "transponder." *See* Dkt. 11-2. That infringement theory was also frivolous because even a cursory inspection of the Apple Watch with Care Smart would confirm there are no map-like images, pixilated or otherwise, and no functionality for a user to create or display a geographical zone. Verizon addressed these and other pleading deficiencies in its Motion to Dismiss the FAC. *See* Dkt. 15 at 7-12.

In its SAC, Plaintiff abandons its infringement theory based on the Apple Watch and alleges yet another new infringement theory—one fundamentally inconsistent with its earlier infringement theories. Previously, Plaintiff alleged that the person wearing the smartwatch is the "entity having an attached transponder," and the smartwatch is the "transponder" that performs the functions recited in claim 1. Now, in its SAC, Plaintiff alleges that the smartwatch is the "entity," and the caregiver's

*smartphone* running the Care Smart app is the "transponder" that performs the functions recited in claim 1. *See* Dkt. 23-2 at 2-3 & 12. As discussed below, Plaintiff's new infringement theory makes no sense because the '982 patent requires the transponder is "attached" to the entity whose location is being tracked. However, the caregiver's *smartphone* (the alleged "transponder") is a separate device used by a different person in a different location; it is *not* attached to the smartwatch or to the person wearing the smartwatch whose location is being tracked.

## III.   ARGUMENT

### A.   Legal Standard

Under Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading *once* as a matter of course . . . ." Fed. R. Civ. P. 15(a)(1) (emphasis added). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). An amended complaint filed in violation of Rule 15(a) has "no legal effect." *U.S. ex rel. Mathews v. HealthSouth Corp.*, 332 F.3d 293, 296 (5th Cir. 2003) ("[F]ailing to request leave from the court when leave is required makes a pleading more than technically deficient. The failure to obtain leave results in an amended complaint having no legal effect."). Accordingly, the Court "may properly strike" an amended complaint that does not comply with Rule 15(a). *Decapolis Sys., LLC v. Epic Sys. Corp.*, W-21-CV-00434-ADA, 2021 WL 5908403, at *2 (W.D. Tex. Dec. 14, 2021).

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed for "failure to state a claim for which relief can be granted." When ruling on a motion to dismiss, courts "accept all well-pled facts as true, construing all reasonable inferences in the [operative pleading] in the light most favorable to the plaintiff." *White v. U.S. Corr., LLC*, 996 F.3d 302, 306-07 (5th Cir. 2021). But courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (citations and internal quotation marks omitted).

To survive a motion to dismiss, a claim must be "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists when the well-pleaded facts create a reasonable inference that the movant is liable for the misconduct alleged. *Id.* Determining plausibility is a "context-specific task" that courts perform using their "judicial experience and common sense." *Id.* at 679. The facts alleged by the plaintiff must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### B.    The SAC Violates Rule 15(a)

Plaintiff's SAC fails to comply with Rule 15(a). The SAC does not comply with Rule 15(a)(1) because Plaintiff already amended its complaint once as a matter of course when it filed its FAC. Dkt. 11. The SAC does not comply with Rule 15(a)(2) because Plaintiff did not obtain Verizon's consent or the Court's leave to file the SAC. Ex. F at 2-4. Accordingly, the Court should strike the SAC. *See Auth Wallet, LLC v. Amarillo Nat'l Bank*, 7:24-cv-00064-DC-DTG, Dkt. 27 at 3 (W.D. Tex. Feb. 28, 2025) (Ex. I) (striking SAC where "Plaintiff never requested the Court's leave or Defendant's consent to amend its pleading a second time"); *Iron Oak Techs., LLC v. Dell, Inc.*, 1:17-cv-999-RP, 2018 WL 1631396, at *1 (W.D. Tex. Apr. 4, 2018) (same); *Educ. Mgmt. Servs., LLC v. Slaikeu*, SA-14-CA-135-OLG, 2014 WL 12586408, at *4, n.32 (W.D. Tex. May 23, 2014), *R&R adopted*, 2014 WL 12586779, at *1 (W.D. Tex. June 12, 2014) (same).

The actions of Plaintiff's counsel, Mr. Ramey, confirm that the SAC does not comply with Rule 15(a). First, Mr. Ramey requested an extension from 14 to 21 days for Plaintiff to respond to Verizon's Motion to Dismiss the FAC. Dkt. 20. That extension would not have been necessary if Plaintiff were eligible to file a SAC under Rule 15(a)(1). Second, in an attempt to invoke Rule 15(a)(2), Mr. Ramey misrepresented to the Court that the SAC was filed "by agreement of the parties," Dkt. 22 at 1, n.1, and then attempted to obtain Verizon's consent *after* he had already filed the SAC. Ex. F at 2-3. When Verizon refused, Mr. Ramey conceded that filing the SAC was a

"mistake" that "would not suffice as a response." *Id.* at 2 ("By mistake my firm filed an amended complaint without realizing that would not suffice as a response.").

This is not the first time Mr. Ramey has "ignored the relevant rules" in filing an amended complaint. Judge Pitman criticized similar behavior in *LS Cloud Storage v. Google*:

> In this case, LS Cloud ignored the relevant rules at more than one juncture in filing its First Amended Complaint. Plaintiff was aware it was well beyond the deadline to file an Amended Complaint as a matter of course. This is obvious from the fact that it reached out to Google requesting its consent. However, not only did LS Cloud fail to procure the required written consent from Google, it failed to file a separate motion requesting leave to file, and then buried that request in a footnote in its First Amended Complaint. This circumvention of the rules in an attempt to proceed under the Court's radar is suspect.

*LS Cloud Storage Techs., LLC v. Google, LLC*, 1:22-cv-00853-RP, 2023 WL 11999195, at *2 (W.D. Tex. Jul. 25, 2023). Mr. Ramey also filed unauthorized amended complaints in other cases in this District. *See Auth Wallet, LLC v. Amarillo Nat'l Bank*, 7:24-cv-00064-DC-DTG, Dkt. 27 at 3 (W.D. Tex. Feb. 28, 2025) (Ex. I); *Mesa Digital, LLC v. Cellco Partnership*, 6:21-cv-1020-ADA, Dkt. 33 at 1 (W.D. Tex. Jul. 26, 2022) (Ex. J). The Court should strike Plaintiff's amended complaint as it did in those other cases.

### C.    The SAC Fails To State A Plausible Claim For Direct Infringement

The SAC alleges that Verizon directly infringes claim 1 of the '982 patent by making, using, selling, offering for sale, and/or importing "Verizon's Care Smart products." Dkt. 23, ¶¶ 7, 15-19; *see also* Dkt. 23-2 (claim chart). Claim 1 recites "[a] method to wirelessly control an entity having an attached transponder." Dkt. 23-1 at claim 1. The method steps are performed on the transponder attached to the entity being controlled. *Id.* According to Plaintiff, "[t]he claims of the '982 patent are directed to wireless control of an entity through an attached transponder in a geographical zone that is defined by a plurality of coordinates in the memory of the transponder." *WirelessWerx IP LLC v. Audi of America, Inc.*, 4:25-cv-11147-FKB-CI, Dkt. 15 at 12 (E.D. Mich. Aug. 15, 2025) (Ex. K).

Claim 1 "is not infringed unless all the steps are carried out." *Limelight Networks, Inc. v.*

*Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014). Additionally, it is undisputed that the preamble to claim 1 is limiting and must be satisfied for infringement to occur. *See WirelessWerx IP, LLC v. Tesla, Inc.*, 7:25-cv-00093-DC-DTG, Dkt. 16 at 11 (W.D. Tex. May 27, 2025) (Ex. L) ("The preamble, which breathes life into the invention, is therefore limiting."); *WirelessWerx IP LLC v. Audi of America, Inc.*, 4:25-cv-11147-FKB-CI, Dkt. 15 at 9 (E.D. Mich. Aug. 15, 2025) (Ex. K) (same).

The SAC fails to state a claim for direct infringement because there is no plausible allegation that Verizon performs the claimed method to control "an entity having an attached transponder." The SAC alleges that a *smartphone* running the Verizon Care Smart app is the "transponder," and a *smartwatch* worn by a different person is the "entity" being controlled. *See* Dkt. 23-2 at 2-3 & 12. However, this is not a plausible infringement claim because the alleged transponder (*smartphone*) and the alleged entity (*smartwatch*) are not "attached" as claim 1 requires. The *smartphone* and *smartwatch* are separate devices used by different people in different locations. Specifically, the *smartphone* running the Care Smart app is used by a caregiver to monitor a family member who is wearing the *smartwatch* in another location. *See* Ex. G at 2 ("The Care Smart app…help[s] family members and other contacts connect with, monitor, and locate the watch wearers from their smartphones."); *Id.* at 6 (under "Location"); Ex. H at 6 ("Using the Care Smart app on their phones, all your personal Trust Circle contacts can keep up on your watch's location.").[3] This is fundamentally different from the invention claimed in the '982 patent, and does not infringe.

The entire focus of the '982 patent is to control movable entities using a transponder that is

---

[3] "[W]hen a pleading refers to documents that are central to a claim, the Court may consider such documents if attached to the motion to dismiss." *Adnexus Inc. v. Meta Platforms, Inc.*, 6:23-CV-152-JKP, 2024 WL 409738, at *2  (W.D. Tex. Feb. 2, 2024) (citing *Lone Star Fund V (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

attached to the entity as it moves through geographical zones. The transponder is "mounted, attached, manufactured, *or otherwise included upon/in various articles or entities*." Dkt. 23-1 at 6:34-35 (emphasis added); *see also id.* at 26:50-52 ("A transponder can be mounted, attached, manufactured, or otherwise included upon or within these various articles."). The transponder can "effectuate numerous events *in its local installation*" on the entity, including configurable operations such as "turning on an ignition to the entity…increasing speed of the entity…unlocking of a door or latch of the entity…closing of a window of the entity…or turning off an alarm." *Id.* at 7:1-5 (emphasis added), 28:19-27. And the transponder travels with the entity to which it is attached. *Id.* at 14:55 ("the transponder travels through waypoints and zones"), 17:13-16 ("When the transponder 105 enters or exits waypoints and zones, an event message is transmitted indicating what reference point or zone has been entered or exited."). Every independent claim of the '982 patent expressly requires "an entity having an attached transponder." *Id.* at claims 1, 20, 43. Thus, there can be no plausible infringement claim where, as here, the accused transponder and the accused entity are not "attached."

Plaintiff knows the importance of this claim limitation. In a related case, Plaintiff argued that having a transponder attached to the entity as it moves through a geographical zone is central to the '982 patent's technological solution:

> The technological solution provided by the '982 patent specifies the physical components of *a transponder attached to an entity* with a microprocessor that is programed to define a geographic zone on a displayed as a pixilated image, and, determine the occurrence of an event as *the transponder moves through the geographical zone*.

*WirelessWerx IP LLC v. Audi of America, Inc.*, 4:25-cv-11147-FKB-CI, Dkt. 15 at 2 (E.D. Mich. Aug. 15, 2025) (Ex. K) (emphasis added); *see also id.* at 7 ("The focus of the claims is wireless control of an entity through an attached transponder in a geographical zone that is defined by a plurality of coordinates in the memory of the transponder."). Having admitted that the '982 patent requires the transponder be "attached" to the entity, Plaintiff cannot state a plausible infringement

claim based on Verizon's Care Smart products, where the alleged transponder (smartphone) and entity (smartwatch) are not attached and do not move together through any geographical zone.

Plaintiff does not simply fail to allege facts showing that the accused transponder (smartphone) and entity (smartwatch) are "attached" as required by the '982 patent. The documents cited in the SAC actually confirm the opposite of what the claims require, and are inconsistent with a plausible infringement claim. Plaintiff has "pleaded itself out of court." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1354 (Fed. Cir. 2021) ("Where, as here, the factual allegations are actually *inconsistent* with and contradict infringement, they are likewise insufficient to state a plausible claim. As we have said before, while a plaintiff's pleading obligations are not onerous, it is possible that, in pleading its claims, a plaintiff may find it has pleaded itself out of court."). Thus, Plaintiff's direct infringement claim should be dismissed.

### D.    The SAC Fails To State A Plausible Claim For Indirect Infringement

The SAC also fails to sufficiently plead indirect infringement of the '982 patent under 35 U.S.C. §§ 271(b) and (c). Plaintiff attempts to plead indirect infringement with the following boilerplate copied from its complaint in a prior case:

> 20. Defendant has and continues to induce infringement. Defendant has actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies), and continues to do so, on how to use its products and services (e.g., to control an entity having an attached transponder) such as to cause infringement of one or more of claims 1-61 of the '982 patent, literally or under the doctrine of equivalents. Moreover, Defendant has known of the '982 patent and the technology underlying it from at least the filing date of the lawsuit. For clarity, direct infringement is previously alleged in this complaint.

> 21. Defendant has and continues to contributorily infringe. Defendant has actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies), and continues to do so, on how to use its products and services (e.g., to control an entity having an attached transponder at https://www.verizon.com/support/knowledge-base-230685 and related systems through its website and product instruction manuals) such as to cause infringement of one or more of claims 1-61 of the '982 patent, literally or under the doctrine of equivalents. Moreover, Defendant has known of the '982 patent and the technology underlying it from at least the filing date of the lawsuit. For clarity, direct infringement

is previously alleged in this complaint. The only reasonable use for the infringing products and services is an infringing use, and there is no evidence to the contrary. The product and service is not a staple commercial product and Defendant had reason to believe that the customer's use of the product and/or service would be an infringing use. As shown on Defendant's websites, such as https://www.verizon.com. Defendant offers the products and/or service with instruction or advertisement that suggests an infringing use.

Dkt. 23, ¶¶ 20-21; *compare* Ex. M (Audi Complaint), ¶¶ 20-21. No specific facts are alleged to support these conclusory allegations. Plaintiff's indirect infringement claims fail for at least three reasons and should be dismissed.[4]

### 1.    No direct infringement by others

First, indirect infringement requires direct infringement by others. *See Adnexus*, 2024 WL 409738, at *6 ("It is axiomatic that there can be no inducement or contributory infringement without an underlying act of direct infringement."). Because Plaintiff did not state a plausible direct infringement claim, the SAC necessarily fails to state a claim for indirect infringement as well.

### 2.    No specific intent to encourage infringement

Second, induced infringement requires "facts plausibly showing that [the defendant] *specifically intended* their customers to infringe the [asserted] patent and *knew* that the customer's acts constituted infringement." *Affinity Labs of Texas, LLC v. Blackberry Ltd.*, 6:13-cv-362, 2014 WL 12551207, at *3 (W.D. Tex. Apr. 30, 2014). The "specific intent" element is "demanding" and requires more than "unsubstantiated assertions" as to the intent of the alleged infringer. *Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*, 6:13-CV-365, 2014 WL 2892285, at *7 (W.D. Tex. May 12, 2014). Here, Plaintiff does not allege any facts that support a finding of specific intent. For example, there are no alleged facts showing that Verizon's website or product documentation directs customers to use the accused product in an infringing manner. To the contrary, Plaintiff relies on boilerplate for

---

[4] Plaintiff agreed to dismiss its indirect infringement claims *without prejudice* pursuant to OGP § VII. Dkt. 14. However, those claims should be dismissed *with prejudice* for the reasons herein.

the specific intent element—boilerplate copied from a prior complaint. *Compare* Dkt. 23, ¶¶ 20-21 *with* Ex. M (Audi Complaint), ¶¶ 20-21.

Plaintiff's induced infringement claim is nothing more than conclusory and generic allegations and should be dismissed. *See Iron Oak Techs., LLC v. Acer Am. Corp.*, 6:17-cv-00143-RP-JCM, 2017 WL 9477677, at *4–6 (W.D. Tex. Nov. 28, 2017) (finding plaintiff's "[c]onclusory allegations" of induced infringement "do not meet the pleading standards established in *Twombly* and *Iqbal*"); *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 6:14-CV-752-JRG-JDL, 2015 WL 5000397, at *4 (E.D. Tex. June 3, 2015) ("[G]eneric allegations that an alleged infringer provides instructional materials along with the accused products, without more, are insufficient to create a reasonable inference of specific intent . . . ."); *Hypermedia Navigation LLC v. Google LLC*, 18-cv-01637-HSG, 2019 WL 1455336, at *2-3 (N.D. Cal. Apr. 2, 2019) ("[W]here a plaintiff merely makes passing references to user manuals guides, and support articles, without ever saying what those materials contain, that is wholly inadequate for an inference of specific intent.") (internal quotations omitted).

### 3.      Substantial non-infringing uses

To state a claim for contributory infringement under § 271(c), "a plaintiff must, among other things, plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012). In this context, "a substantial non-infringing use is any use that is 'not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.'" *Id.* (quoting *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327-29 (Fed. Cir. 2009)). The SAC fails to satisfy this pleading requirement for contributory infringement in two ways.

First, the contributory infringement allegations in the SAC are conclusory boilerplate statements that fail to show how the accused products have no substantial non-infringing use or are

specially made or adapted for infringing use. *See* Dkt. 23, ¶ 21 (quoted *supra* at 13-14). This Court has repeatedly held that such conclusory statements are insufficient to state a plausible claim of contributory infringement. *See, e.g.*, *Textile Comput. Sys. v. Broadway Nat'l Bank*, 620 F. Supp. 3d 557, 566 (W.D. Tex. 2022) ("The Complaint fails to show how the accused products have no substantial non-infringing use or are specially made or adapted for infringing use outside of a threadbare statement that the cards authorize transactions that infringe."); *Billjco, LLC v. Apple Inc.*, 583 F. Supp. 3d 769, 782 (W.D. Tex. 2022) ("BillJCo alleges that iPhones and iPads have no substantial noninfringing uses. BillJCo offers nothing to support this contention. The Court, therefore, disregards BillJCo's allegation regarding substantial noninfringing uses as conclusory."); *Iron Oak Techs., LLC v. Dell, Inc.*, 1:17-cv-999-RP, 2018 WL 1631396, at *2 (W.D. Tex. Apr. 4, 2018) ("Iron Oak's conclusory allegation that '[t]he components provided by [Dell] are not staple articles of commerce suitable for substantial non-fringing use,' (*id.*), is no more than a 'threadbare recital' of one of the elements of a contributory infringement claim.").

Second, the SAC cites documents that show the Verizon Care Smart products *do* have substantial non-infringing uses. For example, a Verizon document cited in the SAC highlights the "Get Help" features of the Care Smart app, including professional monitoring and fall detection response. Ex. H. Another Verizon document cited in the SAC discusses "Time-based (scheduled) alerts" for the Care Smart app. Ex. N. These features are not accused of infringement, and they easily satisfy the definition of a "substantial" non-infringing use described above. Thus, Plaintiff's contributory infringement claim must be dismissed. *See In re Bill of Lading*, 681 F.3d at 1337-39 (affirming dismissal of contributory infringement claims where complaint alleged facts demonstrating the existence of a substantial non-infringing use); *Avocent Huntsville, LLC v. ZPE Sys.*, 3:17-cv-04319-WHO, 2018 WL 1411100, at *21-22 (N.D. Cal. Mar. 21, 2018) (same); *NobelBiz, Inc. v. InsideSales.com, Inc.*, 6:13-cv-360-MHS, Dkt. 32, at 4-5 (E.D. Tex. Oct. 12, 2014)

(Ex. O) (same).

### E.    The SAC Should Be Dismissed With Prejudice

The Court should dismiss the SAC with prejudice because further amendment would be futile. As detailed above, Plaintiff has had three opportunities to state a plausible infringement claim and has come nowhere close to doing so. Plaintiff's original complaint and FAC asserted infringement theories that were frivolous and misrepresented the functionality of the accused products, which even a cursory inspection of the products would have confirmed. *See supra* at 7. Moreover, Plaintiff repeated pleading errors from a prior case where its original complaint and FAC were dismissed for failing to state a plausible infringement claim. *See* Dkt. 15 at 16 (discussing *WirelessWerx IP, LLC v. OnStar, LLC*, 2:23-cv-11501 (E.D. Mich.)). Now, Plaintiff's SAC alleges an infringement theory that directly contradicts the claim language and Plaintiff's own prior positions. *See supra* § III.C. Plaintiff's repeated failures to properly plead infringement show an inadequate prefiling investigation and confirm that further amendment would be futile.

Additionally, Plaintiff's litigation conduct does not warrant another opportunity to amend. Plaintiff asserted baseless infringement claims three times. Plaintiff missed multiple deadlines, including for its preliminary infringement contentions that are now weeks overdue. Plaintiff forced Verizon to incur the expense of filing a motion to dismiss the FAC and then failed to file a brief in response, even after obtaining an extension to do so. *See* Dkt. 24. And Plaintiff filed multiple pleadings that it misrepresented as being "unopposed" or "by agreement of the parties," without Verizon's consent. *See supra* at 3. This case is not an outlier. As other courts have recounted in detail, "Plaintiff's counsel has a track record of commencing 'frivolous suits' . . . for the purpose of 'forc[ing] a modest settlement . . . on the assumption that the [defendant] will prefer to capitulate than fight back.'" *Escapex IP, LLC v. Google LLC*, 23-CV-10839, 2025 WL 893739, at *10-11 (S.D.N.Y. Mar. 24, 2025) (collecting cases).

Accordingly, the Court should dismiss the SAC with prejudice. *See Adnexus*, 2024 WL 409738, at *5 ("[T]he Court finds that Plaintiff has stated its best case and thus declines to exercise its discretion to permit the filing of another amended complaint."); *Contiguity, LLC v. Conduent Bus. Servs., LLC*, W-23-CV-00038-XR, 2024 WL 252068, at *3-4 (W.D. Tex. Jan. 22, 2024) (dismissing with prejudice where Plaintiff failed to address the same pleading deficiency previously identified by Defendant).

## IV.    CONCLUSION

For the reasons above, Verizon requests that the Court dismiss the SAC in its entirety, with prejudice.

Dated: September 2, 2025                    Respectfully submitted,

                                           */s/ Geoffrey M. Godfrey*

*Of Counsel*:                              Geoffrey M. Godfrey (WA Bar #46876)
                                           godfrey.geoff@dorsey.com
Deron R. Dacus (TX Bar #00790553)          DORSEY & WHITNEY LLP
ddacus@dacusfirm.com                       701 Fifth Ave, Suite 6100
THE DACUS FIRM, P.C.                        Seattle, WA 98104
821 ESE Loop 323, Suite 430                (206) 903-8800 (telephone)
Tyler, TX 75701                            (206) 903-8820 (facsimile)
903.705.1117
Fax: 903.581.2543                          *Counsel for Verizon Communications Inc.*

## CERTIFICATE OF COMPLIANCE WITH OGP § VII

The undersigned hereby certifies that counsel has complied with § VII of the Court's Standing Order Governing Proceedings (OGP). Counsel met and conferred on July 3 and 28, 2025, and Plaintiff agreed to dismiss its indirect and willful infringement claims without prejudice, with leave to re-plead those allegations with specificity if supported by a good faith basis under Rule 11. The parties have filed a joint notice confirming their agreement to dismiss the indirect and willful infringement claims. Dkt. 14.

*/s/ Geoffrey M. Godfrey*
Geoffrey M. Godfrey

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who consented to electronic service are being served with a copy of this document via electronic mail on September 2, 2025.

*/s/ Geoffrey M. Godfrey*
Geoffrey M. Godfrey